<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MANLEY TOYS, LTD., a Hong Kong corporation,<br><br>　　　　　　Plaintiff,<br>　v.<br>TOYS "R" US, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | Civ. No. 12-3072<br><br><br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

**Introduction**

In 2011, a jury awarded damages in excess of $19 million against Toys "R" Us, Inc. ("TRU"), which had been sued in connection with a water slide that caused the death of a woman. As part of the global supply chain behind the product, Manley Toys, LTD. ("Manley"), a toy designer and developer based in Hong Kong, sold the slide to TRU. Manley has now filed a lawsuit against TRU alleging that TRU breached an agreement related to the satisfaction of that judgment (the "Holdback Agreement"). Currently before this Court are TRU's motion to dismiss Manley's complaint [D.E. 22] and Manley's motion for a writ of attachment against TRU's property in New Jersey [D.E. 12]. For the reasons set forth below, the motion to dismiss is granted in part and denied in part, and the motion for the writ of attachment is denied.

**Facts**

The parties' business relationship dates back to at least 2004 when they executed a Master Terms Vendor Agreement (the "Vendor Agreement") pursuant to which Manley sold and delivered toy products to TRU. (Defendant's Motion to Dismiss the Complaint ("Def.'s MTD Br."), Exhibit B (Holdback Agreement ("H.A.")) ¶ A.[1]) The Vendor Agreement contains a clause that TRU interpreted as entitling it to withhold payments due to Manley in order to secure funding for the judgment against it (the "Aleo judgment"), which resulted in TRU's withholding an amount exceeding $1 million. (*See* Compl. ¶¶ 7–8; H.A. ¶¶ C–D; Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl.'s MTD Opp. Br.") 5.)

Manley objected to TRU's withholding, and the parties attempted to resolve their differences in January 2012 by agreeing to certain terms memorialized in the Holdback Agreement. They agreed to establish an interest-bearing escrow account (the "Offset Account") to hold funds that would be used to satisfy the Aleo judgment once the case was fully resolved. (H.A. ¶ 7.) The Holdback Agreement contemplated two funding sources for the Offset Account: TRU would make an initial deposit of $1.7 million, and, until the judgment was final, TRU would deduct 5% from the gross price of its purchases from Manley and deposit those amounts as well. (*Id.* ¶¶ 2–3.)

The parties' arrangement provided that TRU would "have no other holdback or offset rights with respect to security for the [Aleo] Judgment other than as set forth in [the Holdback]

---

[1] The Court can properly consider the Holdback Agreement in deciding this motion. Although a district court is normally confined to the four corners of the complaint when deciding a motion to dismiss, it may consider documents attached to the motion that are integral to the complaint. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Manley did not attach the Holdback Agreement to the complaint, the gravamen of which is the breach of that agreement, and TRU attached it to its motion to dismiss.

Agreement." (*Id.* ¶ 6.) That clause notwithstanding, TRU allegedly failed to make any payments to Manley for goods sold and delivered after executing the agreement. (Compl. ¶¶ 11–13.) Manley subsequently brought this suit against TRU for breach of contract, fraud, book account, goods sold and delivered, *quantum meruit*, account stated, and negligent misrepresentation. (Compl. ¶¶ 18–40.)

**MOTION TO DISMISS THE COMPLAINT**

1. Standard of Review

The Federal Rules of Civil Procedure generally require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint is challenged for failing to state a claim for which relief can be granted, a court is tasked with three things. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, it must determine the elements of the plaintiff's claim. *Id.* Next, it must identify those allegations that "'are no more than conclusions, [which] are not entitled to the assumption of truth.'" *Id.* (citation omitted). Finally, it should assume to be true the remaining well-pleaded factual allegations and determine if they establish a plausible claim for relief. *Id.* The Supreme Court has explained that plausible means sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, if the allegations fail to carry the complaint from the realm of a "mere possibility of misconduct" to that of a reasonable inference of misconduct, the complaint must be dismissed. *See id.* at 678–79.

2. Choice of Law

The Holdback Agreement states that it "shall be governed by and enforced in accordance with internal laws of the State of New Jersey." (H.A. ¶ 15.) Because the parties have argued the

viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case. *See USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999) ("[D]espite the interstate, and indeed international, nature of the putative transactions at issue, the parties have not chosen to address choice-of-law issues. . . . Because the parties appear to be in agreement on this issue, we will assume, without deciding, that Pennsylvania law supplies the appropriate substantive rules.").

   3. Breach of Contract

In order to sustain its pleading burden for a breach of contract claim, a plaintiff is required to allege "that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). Some courts in this circuit have stated that New Jersey law also requires a plaintiff to plead that it performed its contractual obligations. *Compare Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) ("To state a claim for breach of contract, [plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."), *with Peck v. Donovan*, 12-1213, 2012 WL 6131055, at *3 (3d Cir. Dec. 11, 2012) ("Under New Jersey law, '[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result.'" (citing *Murphy*)). TRU argues that the complaint fails because Manley did not plead its compliance with the following contractual obligations: (1) providing security for the Aleo judgment, (2) paying the costs to establish and maintain the Offset Account,

4

and (3) executing documents necessary to provide security for the Aleo judgment. (Def.'s MTD Br. 6.)

TRU's assertion that Manley failed to plead that it had provided security for the Aleo judgment is inaccurate. It would appear from the complaint that the core purpose of, and obligations undertaken in, the Holdback Agreement concerned Manley's agreement to provide a source of funds that "TRU may utilize . . . to satisfy the Judgment" (H.A. ¶ 7; *see* Compl. ¶ 9). The Holdback Agreement states that "TRU has requested that Manley provide security for the Judgment, and Manley seeks to accommodate that request pursuant to the terms and conditions of this Agreement." (H.A. ¶ F.) Manley sufficiently pled that it performed that core obligation:

> In order to resolve the dispute [about TRU's withholding rights,] Manley and TRU entered into [the Holdback Agreement]. Pursuant to the Holdback Agreement TRU was to deposit a specified amount owed to Manley in an "Offset Account". Manley and TRU further agreed that TRU would deduct a percentage from future gross invoices, and deposit these funds into the Offset Account.
>
> . . .
>
> Subsequent to execution of the Holdback Agreement, Manley sold and delivered products to TRU.

(Compl. ¶¶ 9, 11.) Thus, the complaint recites that Manley promised to and did sell products to TRU at a discount in order to fund the Aleo judgment, and it pled compliance with that obligation in the complaint.

The Holdback Agreement also provides that "[a]ll Costs to establish and maintain the Offset Account shall be borne by Manley" and that "[t]he Parties agree to execute any further documents necessary to carry out the terms of this Agreement." (H.A. ¶¶ 1, 8.) Based on this language, TRU contends that the complaint fails as a matter of law because "Manley does not allege that it has paid all costs related to establishment and maintenance of the Offset Account,"

5

and because "Manley has failed to allege that it has executed all further documents necessary to provide . . . security for the Judgment." (Def.'s MTD Br. 6.)

The requirement that a plaintiff plead that it performed its contractual obligations derives from the principle that a counterparty is not obligated to perform, and thus cannot be liable for breach, until all material conditions precedent have been satisfied. *Goldman S. Brunswick Partners v. Stern*, 265 N.J. Super. 489, 494 (App. Div. 1993) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that [there] be no uncured material failure by the other party to render any such performance due at any earlier time."). A breach is material if it "goes to the essence of the contract." *Ross Sys. v. Linden Dari-Delite, Inc.*, 35 N.J. 329, 341 (1961). The related principle of substantial performance, however, holds that "following a partial or otherwise immaterial breach of contract, the nonbreaching party must still perform his or her obligations or it will constitute a breach of contract." *15 Williston on Contracts* § 44:58.

At this juncture, the Court cannot conclude that payment of the Offset Account fees or the execution of "further documents" were material conditions precedent to the requirement that TRU pay Manley 95% of gross receipts for goods sold and delivered. The fact that Manley did not reference its performance of these obligations in the complaint is, therefore, not dispositive.

TRU's reliance on *Frederico v. Home Depot* is misplaced. 507 F.3d 188 (3d Cir. 2007). There, plaintiff signed a contract with Home Depot to rent a van for 75 minutes, and the contract specified the hourly rental rates. *Id.* at 191. When she returned the car, the same day but at an undisclosed time, she was informed that the rental department was closed, requiring her to pay for an overnight rental. *Id.* Although she alleged breach of contract, the Third Circuit affirmed the dismissal of that claim because her complaint did "not disclose how Home Depot breached

6

the Agreement: she was charged the agreed upon amount for the time the vehicle was in her possession." *Id.* at 204. The court also found fault with the plaintiff's allegations because she did not "plead that the time of the attempted return was made in accordance with the Agreement." *Id.* Aside from very distinguishable facts, the complaint in *Frederico* was riddled with problems, and, unlike here, did not give rise to the reasonable inference that the plaintiff had been entitled to some performance from the defendant.

TRU's motion to dismiss the breach of contract claim is denied.

4. Fraud

Manley also alleges that TRU committed fraud. Pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. As the Third Circuit has explained, a "plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" in order to "place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (citation omitted). According to New Jersey law, there are five elements of common-law fraud: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

The heart of Manley's fraud claim is in paragraphs 20 and 21 of the complaint, which state:

> 20. TRU fraudulently induced Manley into entering the Holdback Agreement in order to induce Manley to sell additional products by representing to Manley that it would pay for products TRU purchased after the date of the Holdback Agreement and that it would not take any other holdback or offset other than the percentage deduction from future gross invoices. Specifically, TRU in

7

various emails and voicemail messages represented that it would pay Manley for products it purchased from Manley after the date of the Holdback Agreement and that it "was not linking anything" to the personal injury judgment.

21. The representations made by TRU were false at the time they were made. Specifically, TRU has failed to pay for a single domestic product it has purchased from Manley since the date of the Holdback Agreement.

(Compl. ¶¶ 20–21.)

As paragraph 21 makes clear, Manley's fraud claim is "[s]pecifically" premised on the allegation that TRU breached the Holdback Agreement. The claim thus fails to set forth additional facts would plausibly establish that TRU lacked the intent to honor the agreement at the time of or prior to its execution. "Mere nonperformance of a promise is insufficient to show that a promisor had the requisite intent not to perform." *Luscko v. S. Container Corp.*, 408 F. App'x 631, 635 (3d Cir. 2010).

Moreover, in alleging that unnamed TRU employees made representations on an undisclosed date that only possibly support an intent never to perform, the claim lacks the precision and particularity that Rule 9(b) requires. *See 5A Fed. Prac. & Proc. Civ.* § 1297 ("A pleading that simply avers the technical elements of fraud without providing any showing that a factual relationship exists between the defendant or defendants and the challenged conduct does not have sufficient informational content to satisfy the rule's pleading-with-particularity requirement."). Manley's fraud claim is dismissed.

5. <u>Book Account, Goods Sold and Delivered & Account Stated</u>

Manley asserts several counts closely related to breach of contract, seeking to recover the value of the goods it shipped: book account, account stated, and goods sold and delivered, N.J.S.A 12A:2-709. Without any caselaw support, TRU insists that the aforementioned counts fail as a matter of law because "each . . . is nothing more than a formulaic recitation of the

elements of the cause of action" and fails to identify specific goods at issue or the contract pursuant to which they were shipped. (Def.'s MTD Br. 9.)

Although pleaded as unique causes of action in some New Jersey cases, these three counts are effectively remedies for and the means of proving a party's failure to pay for goods or services. N.J.S.A 12A:2-709 is New Jersey's codification of a Uniform Commercial Code remedial provision for aggrieved sellers of goods, which provides that "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages . . . the price" of goods that the buyer accepted. *See also Mack Boring & Parts Co. v. Novis Marine, LTD*, 06-2692 HAA, 2008 WL 4371769, at *8 (D.N.J. Sept. 18, 2008) (Ackerman, J.) ("Plaintiff's contract claim . . . is an action for the price of goods under UCC § 2-709, which permits a seller to 'recover, together with any incidental damages . . . the price (a) of goods accepted.'" (citing N.J.S.A 12A:2-709)).

Account stated is a theory to recover the value of goods delivered or services rendered when there is an "exact and definite balance . . . struck as to which both the creditor and the debtor assent." *29 Williston on Contracts* § 73:56; *see also Restatement (Second) of Contracts* § 282 cmt. c ("An account stated . . . operates as an admission of its contents for evidentiary purposes. It also operates as a promise to pay.") Similarly, "an action on book account is one of the recognized remedies in New Jersey to recover the moneys due for goods sold and delivered[.]" *In re Gottlieb & Co.*, 245 F. 139, 146 (D.N.J. 1917), *aff'd sub nom. Rosenberg v. Semple*, 257 F. 72 (3d Cir. 1919). It is similar in nature to a breach of contract, except that "the amount owed for services rendered can be proved by a statement of account." *Transmodal Corp. v. EMH Associates, Inc.*, 09-3057 FSH, 2011 WL 124641, at *7 (D.N.J. Jan. 14, 2011) (Hochberg, J.); *see also id.* at *7 n.6. "However, when the reasonable value of those services is

placed in issue . . . the books of account alone usually cannot supply that proof." *Hackensack Hosp. v. Tiajoloff*, 85 N.J. Super. 417, 419–20 (App. Div. 1964).

Because these counts are inseparable from Manley's breach of contract claim, the Court will not dismiss them. Manley has sufficiently pled that it shipped goods to TRU in expectation of payment in accordance with the terms of the Holdback Agreement, that it has not yet been paid for those goods, that it demanded payment from TRU, and that there is an account stated between them. (Compl. ¶¶ 6–13, 25, 34.) Should Manley prove successful on its breach of contract claim, however, it will only be able to recover once. *See, Carter Ledyard & Milburn LLP v. Carrascosa*, 07-3216, 2010 WL 3703699, at *4 (D.N.J. Sept. 10, 2010) (Brown, C.J.) ("In light of this Court's ruling [in favor of plaintiff on its] breach of contract claim, the Court need not decide [plaintiff's] account stated and quantum meruit claims, which seek the same damages.").

6. <u>Quantum Meruit</u>

Manley pleads a count for *quantum meruit* on the basis that TRU promised to pay a reasonable price for goods but failed to do so. (Compl. ¶ 31.) TRU argues that claims predicated upon implied contract, such as this one, cannot stand when the complaint alleges that an express contract governs the parties' dispute. (Def.'s MTD Br. 10.)

While it is true that "the existence of an express contract excludes *the awarding of relief* regarding the same subject matter based on quantum meruit," *Kas Oriental Rugs, Inc. v. Ellman*, 394 N.J. Super. 278, 286 (App. Div. 2007) (emphasis added), at the pleading stage, "[n]o such bright-line rule exists," *Palmeri v. LG Electronics USA, Inc.*, 07-5706(JAG), 2008 WL 2945985, at *6 (D.N.J. July 30, 2008) (Greenaway, J.). If Manley's express contract claim fails, its quasi-contract claim may yet be viable. *See, Caputo v. Nice-Pak Products, Inc.,* 300 N.J. Super. 498,

504-05 (App. Div. 1997) ("A plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts. . . . We conclude that a plaintiff who has attempted to prove both breach of contract and unjust enrichment need not choose which one will go to the jury, as long as there is sufficient evidence as to both.  It is only recovery under inconsistent theories that is not permitted. . . . [I]f the jury found that there was no valid contract, the jury could then consider whether plaintiff nonetheless might recover for unjust enrichment[.]").

A plaintiff makes out a proper claim for *quantum meruit* when it pleads that "services were performed with an expectation that the beneficiary would pay for them, and under circumstances that should have put the beneficiary on notice that the plaintiff expected to be paid." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 438 (1992).  Here, Manley has pled that TRU promised to pay a set percentage for goods, that goods were shipped in reliance on that promise, and that TRU failed to make any payment.  (Compl. ¶¶ 9–13, 30–32.)  Such allegations are all that Rule 8 requires.  TRU's motion to dismiss the *quantum meruit* claim is denied.

7. Negligent Misrepresentation

TRU seeks to dismiss the negligent misrepresentation claim because Manley has failed to allege that it owed Manley any duty independent of their contractual relationship.  "[I]n New Jersey . . . . a tort remedy does not arise from a contractual relationship unless the breaching party owed an independent duty imposed by law."  *Shinn v. Champion Mortg. Co., Inc.*, 09-CV-00013WJM, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (Martini, J.).  Manley has not pled the existence of an independent duty and it has not responded to TRU's argument.  Manley's claim for negligent misrepresentation will be dismissed.

**MOTION FOR A WRIT OF ATTACHMENT**

Manley has requested the Court to issue a writ of attachment against TRU's personal property or bank accounts in New Jersey in an amount up to $5,570,420. [D.E. 12-4.] In the federal courts, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment. Fed. R. Civ. P. 64. A writ of attachment is primarily used to "to acquire jurisdiction over an out-of-state defendant to the extent of the defendant's property located in the state, or to gain security for a claim pending as of the time of attachment." *Sentry Ins. v. Sky Mgmt., Inc.*, 34 F. Supp. 2d 900, 903 (D.N.J. 1999) (Wolin, J.); *see 6 Am. Jur. 2d*, Attachments and Garnishment § 16 ("The primary purpose of attachment is to permit a creditor to secure and hold a debtor's property to satisfy a debt which the creditor hopes to prove.").

In this district, Judge Cavanaugh denied an application for a writ of attachment where the plaintiff had failed to show there was a need to secure satisfaction of a potential judgment. Judge Cavanaugh wrote:

> Fed. R. Civ. P. 64 provides that all remedies available under the law of the state where the court is located which provide for the seizure of a person's property to secure satisfaction of a potential judgment are available in federal court. Plaintiff alleges no facts to suggest that Defendants . . . might conceal or secret their assets. Therefore, Plaintiff's motion is denied.

*Tucker v. N. Y. Police Dept.*, 08-2156 DMC, 2009 WL 936860, at *1 (D.N.J. Apr. 6, 2009) (Cavanaugh, J.), *aff'd*, 408 F. App'x 513 (3d Cir. 2010). TRU is a well-established company headquartered in New Jersey, and Manley has not demonstrated a risk of nonpayment or challenged TRU's assertion that it is not leaving New Jersey "and can satisfy any potential judgment in this action." (*See* TRU's Opposition to Manley's Motion for a Writ of Attachment

7.) In short, Manley has not raised a suggestion that TRU might "conceal" or "secret" its assets, and the Court denies the motion for a writ of attachment.

**CONCLUSION**

For the reasons set forth above, TRU's motion to dismiss is denied except as to the claims for fraud and negligent misrepresentation, and Manley's motion for a writ of attachment against TRU's property is denied.

January 22, 2013 /s/ Katharine S. Hayden\_\_\_\_\_
Katharine S. Hayden, U.S.D.J.