<u>NOT FOR PUBLICATION</u>

United States District Court
for the District Of New Jersey

MANLEY TOYS, LTD, a Hong Kong
corporation,

       Plaintiff/counterclaim-defendant,

v.

TOYS "R" US, INC., a Delaware corporation,

       Defendant/counterclaim-plaintiff.

Civil No.: 12-3072 (KSH)

**<u>Opinion</u>**

**Katharine S. Hayden, U.S.D.J.**

**I.**     **<u>Introduction</u>**

      Defendant/counterclaim-plaintiff Toys "R" Us, Inc. ("TRU") previously moved to dismiss the entire complaint filed by plaintiff/counterclaim-defendant Manley Toys, LTD, which had included, among others, claims for breach of contract, fraud, and negligent misrepresentation. [D.E. 22.] The Court dismissed the fraud and negligent misrepresentation claims, but denied the motion to dismiss as to the breach of contract and related claims. [D.E. 81, 82.] Manley thereafter filed an amended complaint. [D.E. 94.]

      Manley had separately moved for a writ of attachment against TRU's property located in New Jersey. [D.E. 12.] In the Court's opinion and order concerning TRU's motion to dismiss, it also denied Manley's attachment motion.

Presently before the Court are TRU's motion to dismiss Manley's amended fraud claim [D.E. 99] and Manley's motion for reconsideration of the Court's order denying the motion for a writ of attachment [D.E. 85]. For the following reasons, both motions will be denied.

## II.     Factual and Procedural Background

The following facts are excerpted with slight modification from the Court's previous opinion [D.E. 81] and from Manley's amended complaint [D.E. 94]. In 2011, a jury awarded damages in excess of $19 million against TRU (the "Aleo Judgment") in a wrongful-death action brought by the estate of Robin Aleo, a young woman who died of her injuries after using a defective water slide sold by TRU. Manley, a Hong Kong-based corporation, had sold the slide to TRU. Both the judgment and jury award were recently upheld by the Supreme Judicial Court of Massachusetts; as of the time of writing, no certiorari petition had been filed. *See generally Aleo v. SLB Toys USA, Inc.*, 466 Mass. 398 (Mass. Sept. 13, 2013).

Prior to the Aleo lawsuit, the parties' business relationship was governed by a Master Terms Vendor Agreement (the "Vendor Agreement"), which was executed in 2004. Under it, Manley was obligated to import toy products for TRU. The Vendor Agreement also contained a clause that TRU interpreted as entitling it to withhold payments otherwise due to Manley, so that TRU could secure funding for judgments in products-liability lawsuits and other litigation related to the products. Relying on that clause, TRU withheld over $1 million owed to Manley after the Aleo Judgment was rendered.

Manley objected to TRU's withholding, and the parties attempted to resolve their differences in January 2012 by executing what Manley has termed the Holdback Agreement. Under its terms, the parties agreed to establish an interest-bearing escrow account to hold funds that would be used to satisfy the Aleo Judgment once the case was fully resolved. In order to

fund the account, TRU was obligated to make an initial deposit of $1.7 million; after that, and until appeals from the judgment had been exhausted, TRU would be permitted to withhold 5% from gross invoices and deposit those moneys as well. The agreement specifically provided that TRU would "have no other holdback or offset rights with respect to security for the [Aleo] Judgment."

After executing the Holdback Agreement, Manley delivered over $5 million in products to TRU. TRU failed to pay for those goods. Manley subsequently brought this lawsuit against TRU for breach of contract, account, goods sold and delivered, quantum meruit, account stated, fraud, and negligent misrepresentation. TRU moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6). [D.E. 22.]

In deciding that motion to dismiss, the Court deemed Manley's fraud allegations to be insufficient because they were premised solely on the fact that TRU had breached the Holdback Agreement, which was not indicative of fraudulent intent:

> The claim thus fails to set forth additional facts would plausibly establish that TRU lacked the intent to honor the agreement at the time of or prior to its execution. "Mere nonperformance of a promise is insufficient to show that a promisor had the requisite intent not to perform."

*Manley Toys v. Toys "R" Us, Inc.*, No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013) (quoting *Luscko v. S. Container Corp.*, 408 F. App'x 631, 635 (3d Cir. 2010)). The Court also decided that the factual allegations in the complaint were too vague to satisfy the heightened fraud pleading standard of Fed. R. Civ. P. 9(b). *Id.*

Manley had separately moved to attach over $5 million of TRU's New Jersey property. [D.E. 12.] The Court denied the motion because Manley had not shown any need for that extraordinary prejudgment remedy. *Id.* at *6–7.

3

Manley has now filed an amended complaint that fleshes out its factual allegations pertaining to the alleged fraud. [D.E. 94.] According to the amended complaint, during the Holdback Agreement negotiations, a TRU representative, Neil Friedman, wanted Manley to agree to: 1) expressly indemnify TRU for the punitive damage portion of the Aleo Judgment, 2) provide a letter of credit or bond in order to secure indemnification of the judgment, and 3) provide TRU with copies of its financial statements. (Am. Compl. ¶ 20.) Manley refused, and TRU, which had concerns about receiving a "spring product line" from Manley, gave up its demands. (Am. Compl. ¶¶ 21–23.) The parties instead agreed to the terms mentioned above: as security for the judgment, TRU would deposit $1.7 million into an escrow account and thereafter could deduct 5% from amounts owed to Manley and deposit those amounts as well. (Am. Compl. ¶ 23.) Friedman represented that if Manley agreed to those terms, TRU would do no other withholding for the Aleo Judgment. (Am. Compl. ¶ 24.)

The amended complaint alleges that in January 2012, the same month that the Holdback Agreement was executed, TRU's CEO, Gerald Storch, visited Manley's showroom in Hong Kong, where he said he was glad the parties were able to reach a resolution and that he looked forward to doing business with Manley under the Holdback Agreement. He also asked Manley to confirm that it would ship a "spring product line" as soon as possible, and Manley agreed. Storch also made a representation that TRU would pay Manley for the products in question. (Am. Compl. ¶ 25.)

Manley alleges that it subsequently shipped TRU $5 million worth of goods for which TRU never paid. (Am. Compl. ¶ 28.) Instead, "TRU again requested the very same terms that it failed to obtain in the negotiated Holdback Agreement, namely 1) a written confirmation that Manley would indemnify TRU for the punitive damages portion of the Aleo Judgment, 2) that

Manley would post a bond and 3) that Manley should provide TRU with its financial statements." (Am. Compl. ¶ 28.) When Manley called David Schwartz, a TRU employee, to inquire about payment, Schwartz said in an email and in a voicemail that TRU would pay Manley for the products, and that it "was not linking anything" to the Aleo Judgment. (Am. Compl. ¶ 29.) Schwartz later "did an about face and stated [TRU] was withholding payment as security for the Aleo Judgment." (Am. Compl. ¶ 30.)

Manley alleges it reasonably relied on the representations made by 1) Friedman during the negotiation of the Holdback Agreement, 2) Schwartz when he said TRU was not linking anything to the Aleo Judgment, and 3) Storch when he visited Manley's showroom. (Am. Compl. ¶ 31.) Manley contends that all of these representations were made with ill purpose: "TRU had no intention of paying for the products at the time the representations were made." (Am. Compl. ¶ 31.) TRU asserts that the revamped fraud claim fares no better than the original, and moves for its dismissal.

### III. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Legal conclusions and conclusory statements must therefore be disregarded. *Id.* at 210–11. Determining plausibility is a "context-specific task," and some allegations require more factual explication than others to meet the required threshold. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (citations omitted).

Allegations of fraud are subject to a heightened pleading standard: the factual circumstances must be pled with particularity. Fed. R. Civ. P. 9(b). That is, a plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into [the] allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Generalized allegations of a fraudulent scheme do not suffice under Rule 9(b)." *St. Clair v. Citizens Fin. Group*, No. 08-1257, 2008 WL 4911870, at *3 (D.N.J. Nov. 12, 2008) (Simandle, J.). "Rule 9(b) borrows the Rule 8(a) standard, as articulated in [*Iqbal*] . . . to evaluate allegations of intent." *Blenheim Group, LLC v. JT USA, LLC*, No. 10–5986, 2011 WL 3203309, at *1 (D.N.J. July 26, 2011) (Simandle, J.). Knowledge, however, need only be pled generally. Fed. R. Civ. P. 9(b).

**IV.    Analysis – Motion to Dismiss the Amended Fraud Claim**

There are five elements of a fraud claim under New Jersey law "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

A. The Negotiation of the Holdback Agreement

Manley contends that Friedman's representations during the negotiation of the Holdback Agreement—namely, that TRU would pay Manley for products shipped after its execution and that the only security withholding would be 5% of gross invoices—amounted to fraud. TRU offers three reasons why this allegation is inadequate.

First, TRU contends, the allegation consists of a promise, not a present or past fact, and does not suggest that TRU lacked the intent to abide by the promise. (TRU Moving Br. 6–8.)

6

Normally, a promise about future actions cannot be the basis for fraud, but "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (Wolin, J.); *see also Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 395–96 (App. Div. 1989) ("The [fraudulent] representation may consist of a present intention to act or not act in the future."). In such circumstances, knowledge the statement is false "may be derived from circumstantial evidence such as: the recklessness or implausibility of the statement in light of later events; showing that the promisor's intentions were dependent upon contingencies known only to the promisor; or simply from evidence indicating that the promisor would not or could not fulfill the promise." *Stochastic*, 236 N.J. Super. at 396.

The Court determines that Manley has included enough facts to render plausible the inference that TRU lacked the intent to abide by its promise to pay it for goods shipped after execution of the Holdback Agreement. The identical terms that TRU sought prior to the execution of the Holdback Agreement, which Manley refused and were expressly excluded from the agreement, are the ones that TRU used as a basis to withhold $5 million just a few months after the execution of the agreement. The complaint does not indicate that circumstances changed in the interim. Moreover, Manley has plausibly alleged that TRU was increasingly concerned about getting a line of products as soon as possible, permitting the inference that TRU had an incentive to take steps to fulfill its business needs. TRU's unexplained about-face and motive are sufficient circumstantial evidence (in the context of a pleading) that TRU fraudulently promised to pay Manley for future shipments solely to obtain the spring product line.

TRU argues that its withholding was sanctioned by the 2004 Vendor Agreement—which required Manley to fully indemnify TRU for product-related litigation—and that the Holdback Agreement was intended only as a means to provide partial security for the Aleo Judgment. (TRU Moving Br. 3, 8.) This defense is not appropriate on a motion to dismiss. The plain terms of the Holdback Agreement, attached to TRU's original motion to dismiss,[1] unequivocally provide that TRU "shall have no other holdback or offset rights with respect to security for the [Aleo] Judgment." (TRU Moving Br., Exhibit B, ¶ 6 [D.E. 22-1].)

Third, TRU claims that the allegations are not specific enough for purposes of Rule 9(b) because some of them are based "on information and belief." (*See, e.g.*, Am. Compl. ¶ 30. ("Specifically, on Manley's information and belief, TRU never intended to pay Manley for products shipped after the date of the Holdback Agreement.").) TRU cites to *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 313 (D.N.J. 2005) (Greenaway, J.), *aff'd*, 691 F.3d 527 (3d Cir. 2012), for the proposition that "[w]here fraud is 'pleaded on information and belief,' such allegations are 'insufficient for purposes of Rule 9(b).'" (TRU Moving Br. 9.)

But *Zavala* is not that sweeping: "allegations based on information and belief do not satisfy Rule 9(b) unless the complaint sets forth the facts upon which the belief is founded." *Zavala*, 393 F. Supp. 2d at 313 (citation omitted). Accordingly, the court dismissed plaintiff's wire fraud claim against Wal-Mart because it was not clear from the complaint "what facts could or would be proven at a later date in order to establish that Wal-Mart engaged in fraud through

---

[1] The Court may consider documents upon which a complaint is based if they are attached to a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

use of the mails or wires." *Id.* Here, Manley has provided factual support in the complaint for its belief that TRU committed fraud.

Manley has plausibly pled a claim for fraud with respect to TRU's representations during the negotiation of the Holdback Agreement.

   B. Schwartz's Statements

Manley alleges that Schwartz committed fraud when, after Manley had already shipped products to TRU, he said TRU would pay for them and that TRU was not "'was not linking anything'" to the Aleo Judgment. (Am. Compl. ¶ 29.) Manley fails to plead, however, that it relied on Schwartz's assurances. The amended complaint provides only that Schwartz made the statements "*[i]n order to induce* Manley to continue to ship more products," but nowhere alleges that his inducement was successful. (Am. Compl. ¶ 29 (emphasis added).) In fact, the amended complaint makes reference to only one instance in which Manley shipped goods to TRU after the execution of the Holdback Agreement, and that was before Schwartz made those statements. (*See* Am. Compl. ¶¶ 28–29.)

   C. Storch's Statements

In the amended complaint, Manley alleges it relied on certain statements that TRU's CEO, Gerald Storch, made when he went to Manley's showroom shortly after the Holdback Agreement had been executed. (Am. Compl. ¶ 32.) In its opposition brief, however, Manley argues that "that there were *two* specific instances of fraudulent representations. The first involved the negotiation of the Holdback Agreement" and the second was Schwartz's representations. (Manley Opp. Br. 15 (emphasis added).) Manley does not mention Storch's statements here, but in context the Court assumes that Manley posits that they amount to a further instance of fraudulent misrepresentation.

The Court concludes that Manley has sufficiently pleaded fraud in connection with Storch's statements when he visited Manley's showroom. According to the amended complaint, he said that "he looked forward to working together with Manley pursuant to the terms of the Holdback Agreement." (Am. Compl. ¶ 25.) He also "wanted to confirm that Manley would ship the 'spring product line' to TRU as quickly as possible." (Am. Compl. ¶ 25.) And it was in "reliance upon Storch's representation that Manley would be paid for the products" that Manley confirmed it would ship the products. (Am. Compl. ¶ 25.) It is reasonable to infer that Storch's statements were offered to induce Manley to ship products quickly to TRU.

The amended complaint goes beyond vague allegations about a fraudulent scheme and contains factual information that provides a plausible basis from which to infer that TRU lacked the intent to honor the agreement at the time of or prior to its execution. TRU's motion to dismiss is denied.

### V.      Analysis – Motion to Reconsider Denial of the Writ of Attachment

Manley has separately asked that the Court reconsider its order denying Manley's motion for a writ of attachment against $5 million of TRU's New Jersey property. [D.E. 85.] The party moving for reconsideration must demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Boretsky v. Governor of N.J.*, 433 F. App'x 73, 78 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1108 (2012). Reconsideration cannot be used purely to relitigate matters already decided. *Boretsky*, 433 F. App'x at 78 (citation omitted). Where applicable, the motion must explain "the

matter or controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i).

In the federal courts, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including the remedy of attachment. Fed. R. Civ. P. 64. As the Court said in its previous opinion, and which is made evident by the plain language of Rule 64:

> A writ of attachment is primarily used to "to acquire jurisdiction over an out-of-state defendant to the extent of the defendant's property located in the state, or to gain security for a claim pending as of the time of attachment." *Sentry Ins. v. Sky Mgmt., Inc.,* 34 F. Supp. 2d 900, 903 (D.N.J. 1999) (Wolin, J.); *see 6 Am.Jur.2d,* Attachments and Garnishment § 16 ("The primary purpose of attachment is to permit a creditor to secure and hold a debtor's property to satisfy a debt which the creditor hopes to prove.").

*Manley*, 2013 WL 244737, at *6.

The New Jersey civil rules provide that a writ of attachment "shall be granted only upon the court's finding . . . (1) that there is a probability that final judgment must be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within [New Jersey] which is subject to attachment." N.J. Ct. R. 4:60-5. As to the statutory grounds for the writ, Manley has invoked subsection (e) of the New Jersey attachment statute, which provides that "[a] writ of attachment may issue" when "[1] the defendant is a corporation created by the laws of another state but [2] authorized to do business in this State and [3] such other state authorizes attachments against New Jersey corporations authorized to do business in that state." N.J. Stat. Ann. § 2A:26-2(e). Manley points out that, by its terms, subsection (e) contains no requirement that the party whose property is to be attached be in the process of (or otherwise be likely to engage in) secreting or concealing its assets.

11

In its earlier opinion, the Court denied Manley's motion without discussing those elements. It took into consideration that the purpose of the writ is to secure a party's assets that might be necessary to satisfy an adverse judgment. It noted further that "TRU is a well-established company headquartered in New Jersey, and Manley has not demonstrated a risk of nonpayment or challenged TRU's assertion that it is not leaving New Jersey 'and can satisfy any potential judgment in this action.'" *Manley*, 2013 WL 244737, at *7. The Court relied in part upon *Tucker v. New York Police Department*, No. 08-2156, 2009 WL 936860 (D.N.J. Apr. 6, 2009) (Cavanaugh, J.), *aff'd in part and appeal dismissed in part*, 408 F. App'x 513 (3d Cir. 2010). There, the plaintiff had invoked New Jersey's attachment statute, but the court denied his motion:

> Fed. R. Civ. P. 64 provides that all remedies available under the law of the state where the court is located which provide for the seizure of a person's property to secure satisfaction of a potential judgment are available in federal court. Plaintiff alleges no facts to suggest that Defendants . . . might conceal or secret their assets. Therefore, Plaintiff's motion is denied.

*Id.* at *1.

Manley argues that the "Court's reliance on *Tucker* . . . was palpably incorrect" in part because subsection (e) of the attachment statute applies only to corporations, and the defendants in *Tucker* were individual police officers. (Manley Recon. Br. 6–7.) Thus, Manley explains, whatever subsection was at issue in *Tucker*—which is unclear from the opinion—must have required a showing of concealment, which subsection (e) does not. (Manley Recon. Br. 7.)

Moreover, Manley contends, the Court overlooked a case cited in its original moving papers, *Preferred Real Estate, Investments, LLC v. Lucent Technologies, Inc.*, No. 2:07-CV-05374, 2008 WL 2414968 (D.N.J. June 11, 2008) (Cavanaugh, J). (Manley Recon. Br. 7–8.) There, the court granted a writ of attachment based on subsection (e) of the attachment statute

without discussing whether the defendant, Lucent, might conceal or dissipate assets. Rather, it granted the motion on the grounds that Lucent was a Delaware corporation with assets in New Jersey and that Delaware has a statute that permits foreign attachments. *Id.* at *2.

The Court declines to reconsider its previous order. For one, the Court did not overlook *Preferred Real Estate*. Judge Cavanaugh noted in a related opinion that the plaintiff added "a claim for attachment *because Lucent allegedly was having financial problems*." *Preferred Real Estate Invs., LLC v. Lucent Techs., Inc.,* No. 07-cv-5374, 2009 WL 1748954, at *1 (D.N.J. June 19, 2009) (Cavanaugh, J.) (emphasis added). Manley has not challenged TRU's financial ability to satisfy the judgment or provided any other reason why attachment is appropriate. Furthermore, the Court finds the reasoning in *Tucker* to be apposite and persuasive; the purpose of attachment and Rule 64 is to secure assets for a potential judgment, and without a showing that such security is necessary, it would be inappropriate for the Court to grant this "extraordinary remedy." *Russell v. Fred G. Pohl Co.*, 7 N.J. 32, 39 (1951); *Wolfson v. Bonello*, 270 N.J. Super. 274, 289 (App. Div. 1994).

Manley also cites to *Lance Industries, Inc. v. Eastern Specialties Co.*, 107 N.J. Super. 296 (Ch. Div. 1969), in which the court discussed the history of the revised, modern New Jersey attachment statute. The court concluded that the statute amounted to "retaliatory legislation" designed to bring New Jersey into equipoise with "other states [that] permit attachment of the goods of duly qualified New Jersey corporations," as a departure from the general New Jersey policy of limiting "the remedy of attachment with respect to foreign corporations to instances where *in personam* jurisdiction is not attainable." *Id.* at 300–01. But *Lance Industries* does not suggest that the remedy of attachment is in any way compulsory when the subject party is a corporation, nor does it hold that consideration of the discretionary elements weighed by this

13

Court was inappropriate. In the same era as *Lance Industries*, state courts were deciding that the purpose of these provisions was to "compel[ defendant's] appearance to the suit of his creditor." *Womack v. De Witt*, 40 Del. 304, 315 (Del. Super. Ct. 1939). Here, TRU is not attempting to avoid this litigation. *See also S. D. Sales Corp. v. Doltex Fabrics Corp.*, 96 N.J. Super. 345, 349–50 (App. Div. 1967) (discussing attachment power in the context of appearances and the pathway of litigation).

Manley has not established that reconsideration is warranted, and its motion is denied.

**VI.     Conclusion**

For the foregoing reasons, TRU's motion to dismiss is denied, as is Manley's motion for reconsideration. An appropriate order will be issued with this opinion.


September 30, 2013                               /s/ Katharine S. Hayden
                                                 Katharine S. Hayden, U.S.D.J.