## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MANLEY TOYS, LTD., a Hong Kong corporation,<br><br>Plaintiff,<br><br>v.<br><br>TOYS "R" US, INC., a Delaware corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 2:12-cv-03072-KSH-CLW |

## <u>DEFENDANT/COUNTERCLAIM-PLAINTIFF TOYS "R" US, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MANLEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Jeffrey A. Novack
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 378-7503

Michael Dockterman (admitted *pro hac vice*)
William R. Andrichik (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
115 South LaSalle Street, Suite 3100
Chicago, IL 60603
(312) 577-1300

Jennifer Quinn-Barabanov (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-8027

*Attorneys For Defendant/Counterclaim-Plaintiff Toys "R" Us, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................................1

II.    BACKGROUND ........................................................................................................3

    A.  TRU AND MANLEY ENTER INTO THE MASTER AGREEMENT
        UNDER WHICH MANLEY AGREES TO DEFEND AND INDEMNIFY
        TRU FOR ANY AND ALL DAMAGES RELATED TO DEFECTS
        IN MANLEY'S PRODUCTS.......................................................................................3

    B.  TRU, A MANLEY AFFILIATE, AND A THIRD PARTY ARE SUED
        FOR DAMAGES ARISING OUT OF A DEFECTIVE MANLEY PRODUCT.........4

    C.  MANLEY SECURES A SETTLEMENT FOR ITS AFFILIATE
        AND LEAVES TRU TO STAND TRIAL ALONE......................................................4

    D.  TRU IS FOUND LIABLE FOR COMPENSATORY AND
        PUNITIVE DAMAGES ..............................................................................................5

    E.  TRU AND MANLEY ENTER INTO THE JANUARY AGREEMENT
        CONFIRMING MANLEY'S LIABILITY FOR THE ALEO JUDGMENT
        AND PERMITTING THE PARTIES TO CONTINUE DOING BUSINESS
        PENDING APPEAL .....................................................................................................5

    F.  MANLEY ANTICIPATORILY REPUDIATES
        THE JANUARY AGREEMENT ..................................................................................6

    G.  MANLEY'S COMPLAINT..........................................................................................7

    H.  TRU'S COUNTERCLAIMS .......................................................................................7

    I.  MANLEY'S PARTIAL SUMMARY JUDGMENT MOTION ..................................8

III.   STANDARD OF REVIEW .......................................................................................8

IV.    ARGUMENT ..............................................................................................................8

    A.  TRU'S COUNTERCLAIMS SHOULD PROCEED TO TRIAL ...............................9

    B.  MANLEY'S MOTION FOR SUMMARY JUDGMENT ON COUNT 1
        SHOULD BE DENIED .............................................................................................20

V.     CONCLUSION.........................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**C**ASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................8

*Boyko v. Am. Int'l Grp., Inc.*,
  No. CIV. 08-2214, 08-2214 RBK/JS, 2012 WL 1495372 (D.N.J Apr. 26, 2012)..................15

*Caldwell Trucking PRP v. Rexon Tech. Corp.*,
  421 F.3d 234 (3d Cir. 2005)....................................................................................16

*Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*
   195 N.J. 231, 245, 948 A.2d 1285  (2008)..................................................................17

*Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*,
  316 F.3d 431 (3d Cir. 2003)....................................................................................14

*Fischer v. Johns-Manville Corp.*,
  512 A2d 466 (N.J. 1986)........................................................................................18

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)....................................................................................20

*Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  No. 13-6272, 2015 WL 7871165 (D.N.J. Dec. 4, 2015)..........................................9

*Gordon v. United Cont'l Holding, Inc.*,
  73 F. Supp. 3d 472 (D.N.J. 2014), (Feb. 6, 2015) ..................................................9

*Griggs v. Bertram*,
  88 N.J. 347, 443 A.2d 163 (1982)..........................................................................14

*Holmberg v. Armbrecht*,
  327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946)..................................................15

*Hurley v. Atchison*,
  T. & S. F. Ry. Co., 213 U.S. 126, 29 S. Ct. 466, 53 L. Ed. 729 (1909)..................15

*In re Spence*,
  No. 05-57552, 2007 WL 1652284 (Bankr. D.N.J. June 6, 2007)..........................20

*Pacifico v. Pacifico*,
  190 N.J. 258, 268, 920 A.2d 73, 78 (2007)............................................................16

*Promaulayko v. Johns Manville Sales Corp.*,
562 A.2d 202 (N.J. 1989).................................................................................18

*Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*,
103 N.J. 177, 510 A.2d 1152 (N.J. 1986) .............................................................16

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)...............................................................................8, 11

*Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*,
741 F. Supp. 2d 651 (D.N.J. 2010) .....................................................................21

*Sachs v. Jefferson Loan Co.*,
No. A-1971-07T3, 2009 WL 483138 (N.J. Super. Ct. App. Div. Feb. 27, 2009) .................20

*Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E .P. Donnelly, Inc.*,
No. CIV. 07-3023 RMB/JS, 2010 WL 905616 (D.N.J. Mar. 9, 2010)...................................12

*Shuttie v. Mikelis*,
No. A-5372-05T2, 2007 WL 2032942 (N.J. Super. Ct. App. Div. July 17, 2007)..................13

*SmithKline Beecham Corp. v. Rohm & Haas Co.*,
89 F.3d 154 (3d Cir. 1996)..............................................................................16

*Transportes Ferreos de Venezuela II CA v. NKK Corp.*,
239 F.3d 555 (3d Cir. 2001).............................................................................10

*Vosough v. Kierce*,
437 N.J. Super. 218, 97 A.3d 1150 (App. Div. 2014) ........................................................12

*Warren Hosp. v. Am. Cas. Co. of Reading, PA*, No. CIV.A. 07-558(JLL), 2009 WL
3074611 (D.N.J. Sept. 23, 2009) .........................................................................15

*Watkins v. DineEquity, Inc.*,
591 F. App'x 132 (3d Cir. 2014) .........................................................................17

**STATUTES**

N.J.S.A. 2A:15-5.12(a) ...................................................................................18

**RULES**

Fed. R. Civ. P. 56(a) .....................................................................................8

**OTHER AUTHORITIES**

4 Williston on Contracts § 8:28 (4th ed.)..................................................................13

Jon J. Kircher & Christine M. Wiseman,
   *Punitive Damages: Law and Practice* 709 (2013).................................................................17

Toys "R" Us, Inc. ("TRU") respectfully submits this memorandum of law in opposition to Manley Toys, Ltd.'s ("Manley") motion for partial summary judgment.

## I.    INTRODUCTION

Manley manufactures toys.  TRU sells toys to the public.  When Manley supplied TRU with toys, it did so under a Master Purchase Order Agreement (the "Master Agreement").  That Agreement required Manley to maintain $3 million in insurance coverage for TRU's benefit and to defend and indemnify TRU for third party claims.  But when TRU was sued along with a Manley affiliate for injuries arising out of a defective Manley toy sold by TRU, Manley failed to live up to those obligations.

After assuming responsibility for TRU's defense in the litigation, Manley: (1) failed to maintain adequate insurance as required; (2) favored its affiliate's interest over TRU's in securing a settlement for the affiliate when a reasonable global settlement was available; and (3) left TRU to stand trial, the result of which was a judgment against TRU that included an $18 million punitive damages award.  Then, after the parties reached an agreement that would permit them to continue doing business together (the "January Agreement") and provide TRU with partial security for the judgment pending appeal, Manley failed to pay for an escrow account as required and anticipatorily repudiated the agreement by refusing to confirm that it would indemnify TRU's punitive damages.  Manley instead brought this suit.

Manley's principal claim is that TRU breached the January Agreement by withholding security from Manley in excess of that permitted under the Agreement.  Manley now seeks summary judgment on that claim, Count 1 of its Amended Complaint.  Manley also seeks summary judgment on TRU's counterclaims – the core of which is that Manley breached its obligations under the Master Agreement in its failure to appropriately insure, defend, and

indemnify TRU as required and, in so doing, acted in bad faith.

With respect to TRU's counterclaims, Manley's motion fails.  Manley does not dispute that it failed to obtain insurance as required under the Master Agreement, that it failed to appropriately contribute to TRU's defense during settlement negotiations, or that it failed to indemnify the punitive portion of the judgment.  Manley instead makes three principal arguments: (1) TRU has suffered no damages because Manley had no obligation to indemnify TRU for TRU's own negligence; (2) New Jersey law does not permit the indemnification of punitive damages; and (3) even if indemnification for punitive damages is permissible, it is limited to $500,000 due to the interplay of three New Jersey statutes.

Each of these arguments should be rejected.  First, TRU suffered damages, regardless of Manley's indemnity obligation under the Master Agreement, based on Manley's bad faith failure to insure and defend TRU.  Second, even if TRU could not be indemnified for punitive damages *ex ante*, Manley agreed to full indemnity retrospectively under the January Agreement.  Third, TRU is in fact entitled to indemnity for punitive damages under the Master Agreement because: (a) Manley's arguments to the contrary are barred by equitable estoppel, given that Manley assumed TRU's defense without reservation; (b) TRU's own negligence is immaterial because the Master Agreement covers "any and all" damages and, while Manley argues that New Jersey requires the indemnitee's negligence to be expressly addressed in an indemnity agreement to be afforded coverage, that rule does not apply to agreements between sophisticated parties as here; and (c) the New Jersey statutes cited by Manley simply have no relation to the obligation to provide indemnity for an out-of-state judgment.

With respect to Count 1, Manley's motion also fails.  First, Manley cannot show that it suffered damages as the result of TRU's alleged breach.  Any amount TRU withheld over the

2

amount called for by the January Agreement was, in any event, owed to TRU under the Master

Agreement.  And Manley affirmed that obligation when it signed the January Agreement and

promised to provide security for the entirety of the judgment against TRU.  Second, Manley has

failed to demonstrate, as required, that it fully performed its own obligations under the January

Agreement.  Manley was required to pay for an escrow account and failed to do so.  Third, any

non-performance by TRU was excused by virtue of Manley's own anticipatory repudiation of the

January Agreement.  Manley anticipatorily repudiated the January Agreement when it refused to

confirm that it would indemnify TRU for the punitive portion of the Aleo judgment.

 For these reasons, TRU's motion for partial summary judgment should be denied.

## II. BACKGROUND

 We detail below the relevant background.

 A. <u>TRU and Manley Enter Into the Master Agreement Under Which Manley Agrees to Defend and Indemnify TRU for Any and All Damages Related to Defects in Manley's Products.</u>

 Since 2004, TRU (a toy retailer) and Manley (a worldwide toy manufacturer) have done

business under the Master Agreement.  (TRU's Supplemental Statement of Disputed Facts,

hereinafter TRU's SSDF, ¶1).    The Master Agreement contains four provisions that are

particularly pertinent here:

  1. TRU enjoyed the right to deduct amounts owed to TRU from payments otherwise due to Manley.  (Master Agreement ¶ 10).

  2. Manley agreed to "defend, indemnify and hold harmless" TRU for damages arising out of breaches of any "representations, warranties or obligations of" Manley. (Master Agreement ¶ 11).

  3. Those representations included that: (1) products sold by Manley would "be free from defects in design, workmanship or materials, including without limitation, such defects as could create a hazard to life"; and (2) products would be "in conformity with all Laws, including without limitation . . . the Consumer Product Safety Act."  (Master Agreement ¶ 5).

3

4.  Manley agreed to maintain insurance of at least $3 million for the benefit of TRU. (Master Agreement ¶ 12).

(TRU'S SSDF ¶ 2).

B.  <u>TRU, a Manley Affiliate, and a Third Party Are Sued for Damages Arising Out of a Defective Manley Product.</u>

In 2005, Manley sold TRU the "Banzai Falls In Ground Slide" – an inflatable slide to be used with in-ground swimming pools.  (TRU'S SSDF ¶ 3).  The Banzai slide contained serious defects and, in 2008, Michael Aleo sued SLB Toys, USA, Inc. (a Manley affiliate), Amazon.com, Inc. ("Amazon"), and TRU alleging that his wife had died after breaking her neck while using the slide.  (TRU'S SSDF ¶ 4).  TRU tendered the matter to Manley for defense and indemnity and Manley accepted TRU's tender.   (TRU'S SSDF ¶ 5).

C.  <u>Manley Secures A Settlement for Its Affiliate and Leaves TRU to Stand Trial Alone.</u>

In October 2011, the parties conducted settlement negotiations.  (TRU'S SSDF ¶ 6). Manley sought to draw upon two insurance policies to fund a settlement: (1) a $1 million policy with Liberty Surplus Insurance Company ("Liberty"); and (2) a $4 million excess coverage policy with Colony National Insurance ("Colony").  (TRU'S SSDF ¶ 7).  In contravention of Manley's obligation to maintain $3 million in insurance for TRU, and to indemnify TRU without regard to the insurance available to Manley, Manley: (1) sought to draw upon these policies for the benefit of all three parties, not just TRU; and (2) sought to draw upon these policies exclusively, rather than contributing any of its own resources, to fund any global settlement.  (TRU'S SSDF ¶ 8).  In addition, the Colony insurance policy was the subject of a rescission lawsuit in which Colony alleged that Manley made false representations in its insurance policy application by, among other things, falsely portraying the number and scope of operations of the entities for which the insurance was sought.  (TRU'S SSDF ¶ 9).  Ultimately, as part of a settlement of that suit, the

4

Colony policy was purportedly rescinded *ab initio* by agreement between Colony and Manley. (TRU'S SSDF ¶ 10).[1]

      With the Colony insurance under cloud, and only $1 million available under the Liberty policy for all three defendants, Manley chose to settle the claims against its own affiliate – SLB – and Amazon with the available insurance money and failed to offer its own money to fund a global settlement.  (TRU'S SSDF ¶ 11).  On October 7, 2011, SLB and Amazon settled the matter for $1,467,000 as against SLB and Amazon, with Liberty contributing $667,000 and Colony $800,000.  (TRU'S SSDF ¶ 12).  This left only $333,000 on the Liberty policy and the disputed Colony policy available.  (TRU'S SSDF ¶ 13).  TRU was left to proceed at trial as the only defendant remaining.  (TRU'S SSDF ¶ 14).

      D.    <u>TRU Is Found Liable for Compensatory and Punitive Damages.</u>

      A jury ultimately found TRU grossly negligent in connection with its sale of the slide. (TRU'S SSDF ¶ 15).  The jury awarded Aleo $2,640,000 in compensatory damages (to which TRU received a credit of $1,607,000 based on prior settlements) and $18 million in punitive damages.  (TRU'S SSDF ¶ 16).  Ultimately, following an unsuccessful appeal, TRU paid the Aleo judgment, by which time it totaled $24,612,110, including interest.  (TRU'S SSDF ¶ 17).

      E.    <u>TRU and Manley Enter Into the January Agreement Confirming Manley's Liability for the Aleo Judgment and Permitting the Parties to Continue Doing Business Pending Appeal.</u>

      Following the Aleo judgment, TRU exercised its right under the Master Agreement to hold funds otherwise payable to Manley to offset the judgment.  (TRU'S SSDF ¶ 18).  The parties then began negotiating an agreement that would provide a framework to continue to do

---

[1]      TRU challenged that rescission in *Toys "R" Us, Inc. v. Colony National Insurance Co.* (D.N.J.)  [Docket No. 13-cv-06759-MCA-LWD], which remains pending.

business while the judgment was on appeal.  (TRU'S SSDF ¶ 19).  In an initial draft agreement, Manley proposed language indicating that there was a dispute between the parties as to the punitive portion of the Aleo judgment.  (TRU'S SSDF ¶ 20).  In response, TRU informed Manley that there was no question that Manley was obligated to indemnify TRU for the entirety of the judgment.  (TRU'S SSDF ¶ 21).  Manley agreed to remove that language.  (TRU'S SSDF ¶ 22).  Manley also proposed new language, not adopted, that set a cap on the offset account at $6 million – well above the compensatory portion of the Aleo judgment.  (TRU'S SSDF ¶ 23). The parties ultimately entered into an agreement – the January Agreement - in January 2012. (TRU'S SSDF ¶ 24).

Under the January Agreement: (1) the parties were to establish an escrow account, with the costs to establish the account borne by Manley; and (2) after making an initial deposit of $1.7 million of funds payable to Manley or its affiliate Toy Teck, TRU would withhold 5% of the gross invoice amount on every invoice from Manley or its affiliate Toy Teck as "security for the Judgment."  (TRU'S SSDF ¶ 25).  Judgment was defined under the January Agreement as the judgment that "was entered against TRU in the *Aleo Action* on November 9, 2011 in the total amount of $19,991,219.69, of which $18,000,000 was for punitive damages."  (TRU'S SSDF ¶ 26).

F.    Manley Anticipatorily Repudiates the January Agreement.

Consistent with the January Agreement, in early April 2012, TRU opened an escrow account.  (TRU'S SSDF ¶ 27).  Manley failed, however, to fund the account.  (TRU'S SSDF ¶ 28).  Almost two weeks later, on April 17, 2012, TRU wrote Manley seeking confirmation that it would "fully reimburse TRU for that $20MM plus interest pursuant to the existing indemnity agreement between Manley and TRU."  (TRU'S SSDF ¶ 29).  On April 25, 2012, Manley,

through its outside counsel, told TRU that it was "not able to answer with a simple 'yes or no.'" and would not otherwise provide "the unequivocal answer [TRU was] looking for." (TRU'S SSDF ¶ 30).

On May 2, 2012, TRU informed Manley that Manley's refusal to confirm that it would fully indemnify TRU for the Aleo Judgment was unacceptable and inconsistent with Manley's obligations under the Master Agreement. (TRU'S SSDF ¶ 31). TRU told Manley that, without Manley's assurance of its full performance under the Master Agreement, TRU would exercise its right of setoff under the Master Agreement and would withhold all funds that would otherwise be payable to Manley for products sold to TRU. (TRU'S SSDF ¶ 32). Manley never responded to TRU's May 2 request. Manley instead filed suit. (TRU'S SSDF ¶ 33).

G.     Manley's Complaint

Manley filed a Complaint against TRU on May 23, 2012. [Docket No. 1]. Manley filed an Amended Complaint on February 23, 2013. [Docket No. 94]. The Amended Complaint alleges seven causes of action. Only Count 1, which alleges breach of the January Agreement by TRU, is at issue here. It alleges that TRU breached the January Agreement by holding back funds in excess of the 5% called for by the January Agreement. (Complaint at 2-3).

H.     TRU's Counterclaims

Between Manley's initial Complaint and Amended Complaint, TRU filed Counterclaims. [Docket No. 87]. TRU made three counterclaims:

Count 1:  that Manley breached the Master Agreement by failing to maintain the requisite amount of insurance, provide an adequate defense for TRU, and indemnify TRU for the entire amount of the Aleo judgment as required by the Master Agreement (Counterclaim at 32-34);

Count 2:  that Manley breached the covenant of good faith and fair dealing by improperly favoring its own interest over TRU's in managing TRU's defense (Counterclaim at 34-36); and

7

Count 3:   that TRU is entitled to a declaratory judgment that it is entitled, under the Master Agreement, to full indemnity for the Aleo judgment and to hold funds that otherwise might be payable to Manley to satisfy that obligation (Counterclaim at 36-38);.

I.     Manley's Partial Summary Judgment Motion

On December 3, 2015, Manley's moved for partial summary judgment.  Manley's motion seeks summary judgment on Count 1 of its Amended Complaint and on all three of TRU's counterclaims.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit under the applicable rule of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Liberty Lobby*, 477 U.S. at 250–251).  A court evaluating a motion for summary judgment must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  *Id.* (citations omitted).  Summary judgment may only be granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party [opposing summary judgment] on that issue."  *Id.* at 149 (internal quotation and citations omitted).  This rigorous standard is not met here.

## IV.    ARGUMENT

Manley argues that it is entitled to summary judgment on all of TRU's counterclaims and on Count 1 of its Amended Complaint.  It is not.

A.    <u>TRU's Counterclaims Should Proceed to Trial.</u>

TRU's counterclaims sound in breach of contract, breach of the covenant of good faith and fair dealing, and seek declaratory relief derivative of TRU's breach of contract claim.  Under New Jersey law, breach of contract requires:  (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.  *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 478 (D.N.J. 2014), appeal dismissed (Feb. 6, 2015).  Similarly, "[t]o assert a claim for breach of the implied covenant of good faith and fair dealing, a complaint must establish (1) the existence of a valid contract, and (2) the defendant had a bad motive or intention and engaged in conduct that denied the benefit of the bargain originally intended by the parties."  *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh,*, No. 13-6272, 2015 WL 7871165, at *6 (D.N.J. Dec. 4, 2015).

Manley's motion for summary judgment on TRU's counterclaims should be denied. Manley does not dispute that it breached its duty to maintain the level of insurance required by the Master Agreement.  And the record evidence provides sufficient evidence for a reasonable jury to conclude that: (1) Manley's inadequate defense breached its obligation to defend TRU under the Master Agreement and its duty of good faith and fair dealing; (2) the Aleo judgment flowed from Manley's breaches of its obligation to maintain the requisite amount of insurance and to defend TRU; and (3) TRU suffered damages – *i.e.,* the Aleo Judgment, as a result of those breaches.  Similarly, a reasonable jury could determine, based upon Manley's conduct during the settlement negotiations and in refusing to indemnify TRU as required by the Master Agreement and January Agreement, that Manley acted in bad faith.  Manley's argument that TRU is barred as a matter of law from recovering on these counterclaims based on TRU's own negligence

9

and/or prohibitions or limitations on indemnity for punitive damages are without merit.  As a result, TRU's counterclaims should proceed to trial.

> 1.  Manley Breached Its Contractual Duties and Duty of Good Faith and Fair Dealing in Connection with the Aleo Settlement Negotiations.

Both Count 1 of TRU's counterclaim alleging breach of the Vendor Agreement based on Manley's failure to obtain insurance and Count 2, alleging breach of the duty of good faith and fair dealing find factual support in Manley's conduct during settlement negotiations in the Aleo case.

With respect to Counterclaim Count 1, Manley's undisputed failure to maintain $3 million in insurance coverage for TRU as required by the Master Agreement came to light during those settlement negotiations.  Instead of $3 million of coverage for TRU, Manley had only: (1) a $1 million policy with Liberty that provided insurance for others in addition to TRU; and (2) a $4 million policy with Colony that was under the cloud of a rescission suit.  After the Aleo Judgment, Manley entered into an agreement with Colony purporting to rescind the policy *ab initio*. Manley concedes that it breached the insurance requirements of the Master Agreement.

With respect to Counterclaim Count 3, Manley misconstrues TRU's breach of the duty of good faith and fair dealing as limited to Manley's failure to indemnify TRU.  That is not the case.  Manley's failure to maintain the requisite insurance, failure to contribute to a potential global settlement in any amount beyond the insurance then available, and Manley's application of those self-limited funds for its own benefit, rather than TRU's, are sufficient to support a finding that Manley acted in bad faith to deprive TRU of the benefits of the Master Agreement – a good faith defense backed by adequate insurance.  *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 562 (3d Cir. 2001)("And while the insurer is not compelled to disregard its own interests in representing or defending an insured, the insured's interests must

10

necessarily come first.").  These facts, and the reasonable inferences that could legitimately be drawn therefrom provide a "legally sufficient evidentiary basis for a reasonable jury to find" that Manley breached its duty of good faith and fair dealing.  *Reeves*, 530 U.S. at 149.

2.     Manley's Breaches Caused the Aleo Judgment.

TRU is entitled to put in front of a jury the facts related to Manley's failure to perform its obligations to insure and defend under the Master Agreement and to perform those obligations in good faith.  The jury can evaluate whether those breaches damaged TRU by causing the *Aleo* verdict.  A jury could reasonably conclude that Manley's failure to secure adequate insurance and its self-interest in applying limited insurance proceeds for its affiliate's interest prejudiced its ability to adequately defend TRU in settlement negotiations and caused the Aleo judgment. Manley's contention that these breaches did not cause any harm to TRU, because Manley subsequently agreed, after the Aleo Judgment, to permit TRU to withhold $1.7 million plus 5% of future sales, which was sufficient, in combination with the Liberty proceeds, to cover the compensatory portion of the Aleo judgment, cannot simply be accepted by the Court, but must be evaluated by a jury.  Given that Manley and Amazon were able to negotiate a settlement for a total of $1,467,000, it is a reasonable inference that Manley would have been able to craft a settlement that included TRU if Manley had maintained $3 million of insurance for TRU as required and/or if Manley had contributed some or all of the $1.7 million plus 5% of future sales *before Aleo* went to trial, instead of *after* the verdict.  TRU has raised a genuine issue of material fact that Manley's failure to insure and adequately defend TRU caused the Aleo judgment, by preventing a settlement and leaving TRU to proceed to trial alone, resulting in the Aleo judgment.

11

3.     Manley Is Obligated to Indemnify TRU for the Entire the Aleo Judgment.

Manley is obligated to fully indemnify the Aleo judgment for three separate reasons: (1) Manley is liable based on its failure to insure and defend; (2) Manley is liable under the January Agreement; and (3) Manley is liable under the Master Agreement for full indemnity.

a.     Manley Is Liable for Its Failure to Insure, Defend and Act in Good Faith.

As discussed above, TRU's claims that Manley breached its obligation to insure (which is undisputed) and defend TRU under the Master Agreement and the duty of good faith and fair dealing preclude summary judgment.  If TRU succeeds in proving those claims at trial, Manley is liable for the damages flowing from those breaches, which consist of the entire Aleo Judgment.  *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E .P. Donnelly, Inc.*, No. CIV. 07-3023 RMB/JS, 2010 WL 905616, at *2 (D.N.J. Mar. 9, 2010)("Under New Jersey contract law, a non-breaching party is entitled to compensatory damages for the losses that arose from the breach"); *Vosough v. Kierce*, 437 N.J. Super. 218, 247, 97 A.3d 1150, 1167 (App. Div. 2014)("Where a contract has been breached, compensatory damages are designed to put the injured party in as good a position as he would have had if performance had been rendered as promised.").  If the Court agrees with TRU on this point, it need not address Manley's remaining arguments against full indemnification of TRU for the Aleo judgment.

b.     Manley Is Liable Based on the January Agreement.

Under the January Agreement, Manley agreed to provide security for the Aleo judgment, with "Judgment" defined as the judgment that "was entered against TRU in the *Aleo Action* on November 9, 2011 in the total amount of $19,991,219.69, of which $18,000,000 was for punitive damages."  Therefore, regardless of TRU's ability to obtain indemnity for punitive damages prospectively, which Manley disputes, Manley agreed to provide security for a specific amount

12

of money then-owed – the entire amount of the Aleo Judgment – in the hope that the amount of the Aleo Judgment would be reduced on appeal.  That hope was not realized.  Manley's post-judgment assent to the January Agreement acknowledging liability in the amount of the entire Aleo judgment does not raise any of the legal and policy concerns regarding prospective indemnity for punitive damages discussed below.  *See Shuttie v. Mikelis*, No. A-5372-05T2, 2007 WL 2032942, at *4 (N.J. Super. Ct. App. Div. July 17, 2007)("It is clear that an acknowledgment to pay an existing debt, immediately or upon demand, constitutes a new contract for purposes of applying the statute of limitations, whether or not collection on the prior debt was time-barred."); 4 Williston on Contracts § 8:28 (4th ed.)("[I]n most jurisdictions any unqualified acknowledgment, so long as it is voluntarily made and is not accompanied with any evidence showing an intention to refuse payment, is the equivalent of a new promise.").  If the Court agrees with TRU on this point, it again need not address Manley's remaining arguments against full indemnification of TRU.

> c.   Manley Breached Its Obligation Under the Master Agreement to Fully Indemnify TRU.

Finally, Manley is liable for full indemnity on a third independent basis: the Master Agreement.  Count 1, in addition to alleging a breach of Manley's duty to provide insurance, also alleges that Manley was required, and failed, to indemnify TRU fully under the Master Agreement.  Count 3 of TRU's counterclaims is derivative of that claim.  It seeks declaratory relief that TRU is entitled under the Master Agreement to full indemnity of the Aleo judgment and to hold funds that otherwise might be payable to Manley to satisfy that obligation.  On these claims, Manley concedes much.  Manley does not dispute that the Master Agreement fully indemnifies TRU for "any and all" breaches of Manley's representations and warranties.  Manley does not dispute that it breached those representations and warranties in manufacturing the

13

defective slide at issue in Aleo.  And Manley does not dispute that the Aleo judgment directly flowed from Manley's breach, or that Manley failed to fully indemnify TRU for the Aleo judgment.

Instead, Manley argues that TRU's claim for indemnity is limited or barred as a matter of law for three reasons. First, Manley argues that TRU's entitlement to indemnity is barred by TRU's own negligence.  Second, Manley argues that indemnification of punitive damages is barred under New Jersey law.  Third, Manley argues that three New Jersey statutes combine to limit indemnity of punitive damages to $500,000.  Each of these arguments should be rejected.

i.   Manley's Objections to Full Indemnity are Equitably Barred.

As an initial matter, Manley's arguments are barred by equitable estoppel.  Under New Jersey law, an insurer is equitably estopped from disclaiming a duty to indemnify where it takes control of a case prior to litigation, or defense of an action after litigation, without reserving or disclaiming coverage.  *Griggs v. Bertram*, 88 N.J. 347, 356-57, 443 A.2d 163, 168 (1982)("In [both] the control of a case before litigation and the assumption of a defense after litigation-the conduct of the insurer forecloses independent or parallel action by the insured to defend itself. In either situation the insured is effectively precluded from acting in its own interest under the policy. Hence, an estoppel properly bars the carrier from later asserting it had no responsibility to protect the insured under the policy."); *see also Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 446 (3d Cir. 2003)(recognizing that even "unreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop an insurer from later repudiating responsibility under the insurance policy.").  This is so even if the insurer would not have been liable under the policy.  *Id.*

14

The rule represents judicial recognition of the unfairness of an insurer: (1) assuming control of the case and foreclosing independent or parallel action by the insured; and (2) then disclaiming coverage. *Id.* That same logic compels the recognition of equitable estoppel in the indemnity/indemnitor context where the indemnitor assumes defense of the action. Holding otherwise would put form over substance, a result inconsistent with the equitable underpinnings of equitable estoppel. *Hurley v. Atchison*, T. & S. F. Ry. Co., 213 U.S. 126, 134, 29 S. Ct. 466, 469, 53 L. Ed. 729 (1909)("Equity looks at the substance, and not at the form."); *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946) ("Equity eschews mechanical rules; it depends on flexibility.")[2]

This Court should conclude that Manley is equitably estopped as a matter of law from disclaiming full indemnity because Manley assumed full responsibility for defense of the *Aleo* case and did not disclaim its obligation to indemnify on any of these bases until after the Aleo Judgment was entered. *Boyko v. Am. Int'l Grp., Inc.*, No. CIV. 08-2214 RBK/JS, 2012 WL 1495372, at *13 (D.N.J. Apr. 26, 2012)(holding that the defense of equitable estoppel is issue for the court).

---

[2]   *Warren Hosp. v. American Cas. Co. of Reading, PA*, which arguably held otherwise in *dicta*, should either be rejected outright or limited to its facts. There, the Court resolved this issue, even though it had already granted summary judgment to the would-be indemnitee on another basis, and appeared to rest its conclusion on the fact that the indemnitor was not labeled an insurer. *Warren Hosp. v. Am. Cas. Co. of Reading, PA*, No. CIV.A. 07-558(JLL), 2009 WL 3074611, at *6 (D.N.J. Sept. 23, 2009) aff'd sub nom. *Warren Hosp. v. Am. Cas. Co. of Reading*, 398 F. App'x 800 (3d Cir. 2010)("Were this Court to conclude that Warren is an insurer, its decision to continue to defend the Haggerty matter could well have brought this case under the ambit of" the equitable estoppel rule."). Moreover, in that case: (1) there does not appear to have been any express indemnity agreement, like here, that resembles an insurance policy in that it included an obligation to defend and indemnify; and (2) the indemnitor there did notify the would-be indemnitee that it reserved its rights prior to resolution of the action. *Id.*

15

ii.   <u>TRU's Negligence Is Immaterial to its Contractual Right to Indemnity.</u>

Manley's first argument is that it is not required to indemnify the Aleo judgment because the Aleo Judgment arises out of, and the Master Agreement does not cover, damages due to TRU's own negligence.  That argument should be rejected.  Manley relies upon authority holding that, absent express language, which Manley claims is absent here, New Jersey courts will not construe contracts to indemnify for losses flowing from the indemnitee's own negligence. *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191, 510 A.2d 1152, 1159 (N.J. 1986)(finding that "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms" because, as a general matter, ambiguities are construed against the indemnitee).  But that rule, which is a distillation of the general rule that contractual ambiguities are construed strictly against the indemnitee (*id.*), does not apply to contracts negotiated at arm's length between sophisticated parties, as here.  *Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 244 (3d Cir. 2005)(recognizing that contracts negotiated at arms-length by sophisticated parties are not subject to the general rule that ambiguities in contracts are strictly construed against the indemnitee); *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 161 (3d Cir. 1996)(same).[3]

---

[3]   *Pacifico v. Pacifico*, 190 N.J. 258, 268, 920 A.2d 73, 78 (2007)("If both parties are equally 'worldly-wise' and sophisticated, contra proferentem is inappropriate.").

16

iii.     New Jersey Permits Indemnification of Punitive Damages.

Contrary to Manley's position, New Jersey law does not prohibit indemnification of punitive damages based on public policy.

Because the New Jersey Supreme Court has never opined on this specific issue, the task of this Court is to "predict how the New Jersey Supreme Court would resolve the issue" *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014).  Rather than precluding indemnity, the New Jersey Supreme Court has strongly signaled that it would permit indemnification of punitive damages in the circumstances here.

In *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, the New Jersey Supreme Court: (1) noted that it had never held "that punitive damages are uninsurable" and that "the Legislature has at least implicitly recognized that insurance of punitive damages does not violate the public policy of" New Jersey[4]; (2) concluded that the rationale for barring insuring punitive damages, if there is one, is to ensure that punitive damages are borne by the wrongdoer; (3) recognized that it had permitted punitive damages against an entity even in the scenario where punitive damages would not serve that goal; and (4) ultimately concluded that "there is no clear indication that" New Jersey's public policy would bar insuring punitive damages.  195 N.J. 231, 245, 948 A.2d 1285, 1293 n. 3 (2008).  Permitting insurance of punitive damages, as *Chubb* all but endorses, is also consistent with the modern trend in support of allowing such coverage.  *See* Jon J. Kircher & Christine M. Wiseman, *Punitive Damages: Law and Practice* 709 (2013).  Based on *Chubb*

---

[4]     *Chubb* cited N.J.S.A. 17:30A-5, which prohibits recovery of punitive damages "unless covered by the policy," as support that the New Jersey Legislature had implicitly recognized the propriety of the insurance of punitive damages.  Other New Jersey statutes provide additional support.  First, N.J.S.A. 17:22-6.72 similarly bars recovery of punitive damages "unless covered by the policy."  Second, N.J.S.A. 59:10-4 authorizes municipalities to indemnify their employees for punitive damages so long as they are not based on acts constituting "actual fraud, actual malice, willful misconduct or an intentional wrong."

and the modern trend towards permitting indemnification of punitive damages, this Court should conclude that the New Jersey Supreme Court would not categorically prohibit indemnification of punitive damages.

Moreover, even if the New Jersey Supreme Court were to recognize some limitations on the indemnification of punitive damages, this Court can safely predict that such limitations would not apply here, where: (1) the indemnitor is not an innocent third party; and (2) the indemnitee engaged in gross negligence. *Chubb* recognized that the rationale for a bar depends upon the indemnifier being non-culpable and the indemnitee being a "wrongdoer" who should bear the burden of punitive damages. That is not the case here, where Manley indisputably engaged in wrongful conduct when it sold TRU a defective product that violated Manley's representations and warranties under the Master Agreement and was the subject of a recall by the Consumer Product Safety Commission. Furthermore, TRU was found to have been grossly negligent in Aleo, a level of culpability that would not have supported a punitive damage award under New Jersey Law. N.J.S.A. 2A:15-5.12(a)(requiring actual malice or wanton and willful disregard and foreclosing punitive damages "by proof of any degree of negligence including gross negligence."). Since New Jersey would not impose punitive damages for such conduct, enforcing the contractual indemnity obligation is not inconsistent with New Jersey's public policy. Rather, enforcing Manley's contractual indemnity obligation here would be consistent with New Jersey's policy of looking to the manufacturer, as the "most efficient accident avoider," to indemnify downstream parties. *Promaulayko v. Johns Manville Sales Corp.*, 562 A.2d 202, 206 (N.J. 1989); *Fischer v. Johns-Manville Corp.*, 512 A2d 466, 473 (N.J. 1986).

Manley's brief makes no mention of *Chubb*. Manley instead cites a string of authority that pre-dates *Chubb* and concerns the right to insurance for punitive damages, not the right to

indemnity from a joint tortfeasor. This Court should reject that authority as both stale and inapposite. The Court should instead conclude either that indemnification of punitive damages is always permitted, or that it is not barred in these circumstances, where: (1) the indemnifier is not an innocent third party but a wrongdoer; and (2) the indemnitee's conduct was found to be grossly negligent.

iv.    New Jersey Statutes Do Not Limit TRU's Right to Indemnity.

Finally, Manley's argument that any indemnity for punitive damages should be limited to $500,000 is wholly devoid of support. None of the three statutes cited by Manley relates to indemnification of punitive damages for an out-of-state judgment. They instead relate to: (1) a plaintiff's entitlement to punitive damages for wrongful death in a suit brought under New Jersey's Wrongful Death Act; (2) a survivor's right to seek damages under New Jersey law; and (3) a New Jersey law limiting a plaintiff's right to collect punitive damages in any suit. Manley does not cite any case interpreting these provisions alone, or in combination, to override an indemnity provision of a vendor agreement for a retailer engaged in sales throughout the United States and internationally based solely on the fact that the contract contains a New Jersey choice of law provision. As a result, Manley's argument for a $500,000 cap on any indemnity for punitive damages should be rejected as a matter of law.

*                    *                    *

For these reasons, Manley's motion for summary judgment on TRU's counterclaims should be denied. TRU has raised genuine issues of material fact as to whether: (1) TRU was damaged by Manley's breach of its obligation to maintain appropriate insurance and to provide TRU with an adequate defense (Counterclaim Count 1); (2) TRU was damaged by Manley's breach of its duty of good faith and fair dealing (Count 2); and (3) TRU was entitled to

19

indemnity under the Master Agreement (Counterclaim Counts 1 and 3) that are sufficient to withstand summary judgment.

      B.    <u>Manley's Motion for Summary Judgment on Count 1 Should be Denied.</u>

Count 1 of Manley's Amended Complaint alleges that TRU breached the January Agreement by withholding greater amounts than permissible under the January Agreement. Manley's motion for summary judgment on Count 1 should be denied for three reasons.

First, Manley cannot show damages. As discussed above, any moneys withheld by TRU in excess of what was allegedly permissible under the January Agreement were monies owed to TRU based on TRU's entitlement to full indemnity for the Aleo judgment pursuant to the Master Agreement, the January Agreement, and/or as a result of Manley's tortious conduct.

Second, Manley is not entitled to summary judgment because it failed to satisfy its own obligations under the January Agreement. Specifically, Manley failed to pay the cost to establish the escrow account as required and the materiality of that failure is an issue of fact for the jury. *Frederico v. Home Depot*, 507 F.3d 188, 204 (3d Cir. 2007)(affirming dismissal of breach of contract claim where plaintiff failed to properly allege that she had performed her own contractual obligations); *In re Spence*, No. 05-57552, 2007 WL 1652284, at *4 (Bankr. D.N.J. June 6, 2007)(recognizing that materiality is normally an issue for the finder of fact).

Third, Manley is not entitled to summary judgment because there is a sufficient basis for a jury to conclude that Manley anticipatorily repudiated the January Agreement. Under the doctrine of anticipatory repudiation, a party breaches a contract where its conduct provides reasonable grounds to support a belief by the counterparty that the party will not honor its contractual obligations at the time they are due. *Sachs v. Jefferson Loan Co.*, No. A-1971-07T3, 2009 WL 483138, at *3 (N.J. Super. Ct. App. Div. Feb. 27, 2009). Anticipatory repudiation is a

20

jury question. *Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 672 (D.N.J. 2010).

Under the January Agreement, Manley was obligated to indemnify TRU fully for the Aleo judgment.  The January Agreement: (1) specifically described Manley as being responsible for the Aleo judgment; (2) expressly listed the full amount of the judgment and noted the portion that represented punitive damages; and (3) was the product of negotiation reflective of an intent that Manley indemnify the punitive damages, given that the parties rejected language suggesting there was a dispute as to the issue and Manley itself proposed language capping the offset at an amount greater than the compensatory portion of the Aleo judgment.  In April 2012, when TRU requested confirmation that Manley would honor its obligation to indemnify TRU fully, Manley refused to provide any such assurance.  And, when TRU warned that it would have no choice but to withhold all funds until it received adequate assurance, Manley was silent.   In these circumstances, a reasonable juror could conclude that Manley's conduct gave TRU reasonable grounds to believe that Manley had anticipatorily repudiated the January Agreement.

## V.    CONCLUSION

For all these reasons, Defendant/Counterclaim-Plaintiff Toys "R" Us, Inc. respectfully requests that this Court deny Manley's Motion for Partial Summary Judgment as reflected in the proposed order filed herewith.

Dated:  January 13, 2016                          Respectfully submitted,


Jeffrey A. Novack                              BY:  /s/   Jeffrey A. Novack
STEPTOE & JOHNSON LLP                                  One of the Attorneys for
1114 Avenue of the Americas                            Toys "R" Us, Inc.
New York, NY 10036
(212) 378-7503

Michael Dockterman (admitted *pro hac vice*)
William R. Andrichik (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
115 S. LaSalle, Suite 3100
Chicago, IL 60605
(312) 577-1300

Jennifer Quinn-Barabanov (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-8027


*Counsel for Defendant/Counterclaim-Plaintiff Toys "R" Us, Inc.*

22